IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINARAFIK ALAKRAMI, | : | CIVIL ACTION |
|     Plaintiff | : | |
|   v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
|     Defendant | : | NO. 22-4084 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE            June 30, 2023

  Linarafik Alakrami ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff 's request for review is granted and this case is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g).

### I.  PROCEDURAL HISTORY[1]

  On December 5, 2019, Plaintiff applied for SSI, alleging disability, because of physical and mental impairments, that commenced on September 1, 2019. R. 15. The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing. Id. On July 14, 2021, due to COVID-19 precautions, Plaintiff appeared before Kathleen McDade, Administrative Law Judge ("the ALJ"), for a telephonic hearing. Id. Plaintiff, represented by an attorney, and Daniel

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply ("Reply"), and the administrative record. ("R.").

Rapucci, a vocational expert, ("the VE") testified at the hearing. *Id.* On August 11, 2021, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 15-31. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on August 22, 2022, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on June 20, 1976, R. 29, was 45 years old on the date of the ALJ's decision. She has never worked and lives with her husband, who is disabled, her disabled minor son, and two other minor children.[3] R. 41-42.

B.   Plaintiff's Testimony

At the July 14, 2021 administrative hearing, Plaintiff testified, *via* an interpreter, about her

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 416.920(g).

[3] Plaintiff's disabled husband and son receive disability benefits. R. 42.

2

physical and mental impairments.[4] R. 41-51. Plaintiff has acute pain in her hips and an injured tendon on her left thigh; to prevent falling because of these problems, Plaintiff uses a walker. R. 43. Further, her hip pain is so acute that she needs to change positions every 10 minutes; she may stand for only five minutes. *Id.* Plaintiff stated she is unable to walk "a lot." R. 44. She requires hip surgery; in 2020, the procedure was cancelled because of COVID-19; at the time of the hearing, Plaintiff hoped to have surgery in approximately three months once her surgeon received insurance authorization. *Id.*

Plaintiff also has shoulder pain, for which she has undergone unsuccessful physical therapy and received injections; surgery has been unavailable, because of COVID-19. R. 44-45. She can only raise her hands to shoulder level; she also has difficulty using her arms below waist level and needs assistance to dress. R. 45. Plaintiff has undergone wrist surgery and complains that she still experiences pain and is unable to hold items in her hand. *Id.*

The medications Plaintiff takes usually alleviate her pain for no more than one to two hours. R. 46. Hot showers help alleviate the pain in her shoulders and wrists. *Id.*

Plaintiff, along with the rest of her family, have poor mental health stemming from their experiences during the war in Syria. R. 47. Her nightmares relive her war experiences. *Id.* To avoid re-living these experiences, Plaintiff only communicates with family still in Syria *via* social media. R. 48. She experiences acute depression twice or thrice weekly, during episodes she cries excessively. *Id.* Plaintiff also suffers from concentration deficits; often, she starts a task and forgets to complete it. R. 49. She noted difficulty following conversations with her children. *Id.*

Plaintiff experiences serious daily fatigue leaving her unable to play with her children. R. 49. Plaintiff performs few household chores, because of her fatigue; her older children help her

---

[4] Plaintiff is a native of Syria. R. 47. She and her family left Syria during the war, stopping in Egypt before arriving in the United States. *Id.*

complete most tasks.  R. 50.

C.     Vocational Testimony

The ALJ asked the VE to consider an individual having Plaintiff's age and education, who was limited to sedentary work[5] with the following limitations:  occasionally able to balance, stoop, crouch, kneel, and climb ramps and stairs; unable to climb ladders, ropes, or scaffolds; unable to reach overhead bilaterally; able to reach frequently in other directions; able to frequently handle, finger and feel bilaterally; able to occasionally operate foot controls; able to tolerate occasional exposure to extreme cold, wetness, humidity, dust, fumes, gases, poor ventilation and vibration; unable to tolerate exposure to unprotected heights or unprotected moving mechanical parts; able to perform work that involves little to no judgment; able to perform work duties that may be learned on the job in a short period of time and by demonstration only; unable to have any contact with the general public; and requiring work that is production, rather than goal-oriented, such that all production criteria can be made up at the end of the workday or shift; and able to tolerate few changes in the daily work duties, schedule and location.  R. 51-53.  The VE opined that this person could perform the following jobs:  (1) table worker, 25,000 positions in the national economy; (2) general masker, 75,000 positions in the national economy; (3) egg processor, 26,000 positions in the national economy.  R. 53-54.  The VE stated that his testimony was consistent with the Dictionary of Occupation Titles ("DOT"), except for the restriction on overhead reaching; his testimony in that regard was based upon his experience and knowledge.  R. 54.

The VE further testified that, if the individual was limited to four total hours of sitting, standing, and walking, they could not perform any work.  *Id.*  The VE opined as well that the

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties."  20 C.F.R. § 416.967(a).

sedentary jobs he identified could be performed by an individual who could speak no English and only spoke Arabic. R. 55-56. He further opined that a person who was off-task 15% of the time could not sustain work. R. 56-57. Finally, inability to lift or carry up to 10 pounds occasionally would exclude even sedentary work. R. 57.

### III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] has not engaged in substantial gainful activity since December 5, 2019, the application date (20 CFR 416.971 *et seq.*).

2. [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine Sjogren's syndrome, mild lupus, right shoulder tendinosis and tendon tear, left hip dysplasia with mild osteoarthritis; trochanteric bursitis of both hips; obesity; depressive disorder; and post-traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can occasionally balance, stoop, crouch, kneel, and climb ramps and stairs, but can never crawl or climb ladders, ropes, or scaffolds. The individual[] can perform no overhead reaching bilaterally; frequently reach in other directions; frequently, handle, finger, and feel bilaterally; and occasionally operate foot controls. The individual can have occasional exposure to extreme cold; wetness; humidity; dust, fumes, gases, and poor ventilation; and vibration. The individual can have no exposure to hazards such as unprotected heights or unprotected moving mechanical parts. The individual is limited to performing work that needs little or no judgment, to do simple duties that may be learned on the job, in a short period of time, and by demonstration only. To avoid distraction, it should involve no contact with the general public. The work should be goal,

        rather than production oriented, allowing all production criteria to be made up by the end of the work shift. There should be few changes in the daily work duties, schedule, and location.

5.     [Plaintiff] has no past relevant work (20 CFR 416.965).

6.     [Plaintiff] was born on June 20, 1976 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The [Plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7.     [Plaintiff] has at least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because [Plaintiff] does not have past relevant work (20 CFR 416.968).

9.     Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, since December 9, 2019, the date the application was filed (20 CFR 416.920(g)).

R. 17-19, 22, 29-30.

## IV. DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation

omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.   Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past

employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff had no past relevant work, she could perform three sedentary jobs that exist in the national economy and, hence, was not disabled. R. 15-31. Plaintiff disputes the ALJ's decision and argues that: (1) the ALJ's finding that she could perform the sedentary jobs the VE identified lacks substantial evidence, because there exists an unresolved conflict between the VE's testimony and the DOT, Pl. Br. at 6-15; and (2) the ALJ erred by affording only partial weight to the opinions of treating physician Emma J. de Louw, M.D. *Id.* at 15-18. The Commissioner denies both arguments. Resp. at 4-9. This court finds that the ALJ failed to resolve a conflict between the VE's testimony and the DOT, hence, her decision lacks substantial evidence.

1.    The VE's Testimony Conflicts with the DOT

Plaintiff's argument is the following. The hypothetical question posed to the VE asked him to consider an individual who could only perform work that could be "learned on the job in a short period of time and by demonstration only." R. 51. In response to this query, the VE identified three sedentary jobs, all of which have a Specific Vocational Preparation ("SVP") of 2. R. 53-54. Plaintiff notes that, by definition, SVP 2 jobs require "beyond a short demonstration up to and including 1 month." Pl. Br. at 8 (citing DOT, Appendix C, Components of the Definition Tailer, 1991 WL 688702 (4th ed. Rev. 1991)). Plaintiff argues that, because SVP 2 jobs require more than

a short demonstration, they are inconsistent with the express terms of the hypothetical question the ALJ posed. *Id.*

The Commissioner takes the position that there is no conflict with the DOT, because the ALJ's hypothetic merely asked the VE to consider if the jobs could be learned by demonstration only and not whether the demonstration, or the learning of the job, would take a short period of time. Resp. at 7. Notably, the Commissioner does not dispute the fact that the definition of SVP 2 work indicates that it requires more than a short demonstration and can take up to and including one month to learn. *See id.*

The Commissioner's reading of the record is unreasonable. The ALJ's hypothetic plainly asked for jobs that could be learned in short period of time by demonstration only. Because SVP 2 jobs require more than short demonstration and up to one month to learn, it is not clear that the VE's response satisfied the ALJ's question. In other words, there does appear to be a conflict between the VE's selection of three SVP 2 jobs and the VE's hypothetical limitations (which coincide with the residual functional capacity ("RFC") the ALJ determined).

When, as in this case, there is an apparent conflict with the DOT, the ALJ has the affirmative duty to obtain a reasonable explanation for the conflict. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000). Once the ALJ receives an explanation from the VE, she has the duty to explain in her decision how she resolved the conflict. *Id.* Because the ALJ never recognized the apparent conflict, she did not seek to explain or resolve the conflict in her decision. This constitutes error. *See Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014). However, if the record otherwise contains substantial evidence to support the ALJ's decision, the error is harmless and remand is unwarranted. *Id.* (citing, *inter alia*, *Rutherford*, 399 F.3d at 557).

The ALJ's error is not harmless, because all three of the sedentary jobs the VE identified

9

were SVP 2 jobs. Hence, there is no acceptable VE response to the ALJ's hypothetic requesting jobs that Plaintiff can perform, given her RFC. Because it is the ALJ's burden to produce such evidence at the fifth step of the sequential evaluation process, *Hess*, 931 F.3d at 201, she has failed to satisfy her burden. This case must be remanded so that the ALJ can resolve the conflict with the DOT that arises herein and obtain VE testimony that properly addresses Plaintiff's RFC.

    2.   <u>The ALJ Properly Assessed Dr. de Louw's June 25, 2021 Opinions</u>

Plaintiff's second argument follows. She notes that Dr. de Louw prepared a Medical Source Statement on June 25, 2021. Pl. Br. at 15 (citing R. 1482-87). In that statement, Dr. de Louw opines that Plaintiff can never lift and carry any amount of weight, R. 1482; this limitation is work-preclusive, per the VE. R. 57. The doctor also opined that Plaintiff's total amount of sitting, standing, and walking was less than 8 hours, R. 1483; this is also work-preclusive, per the VE. R. 58. Plaintiff contends that the ALJ failed to apply properly the regulations governing medical opinions. Pl. Br. at 16-17. Had she done so, Plaintiff maintains that the ALJ might have found Plaintiff's RFC to be more limited and, hence, reached a different outcome. *Id.* at 17-18. The Commissioner counters that the ALJ properly applied the governing regulations to Dr. de Louw's extreme opinions. This court agrees that the ALJ committed no error in this regard.

The governing regulations indicate that, when an ALJ considers medical opinions in the record, the two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Those are the only two factors an ALJ is required to consider explicitly. *Id.* Supportability refers to the objective medical evidence and supporting explanation the medical source provides to support her medical opinions. § 416.920c(c)(1). Consistency refers to whether and how consistent the medical source's opinion is with evidence from other medical and nonmedical sources in the record. § 416.920c(c)(2).

In this case, Dr. de Louw provided no support for her opinion that Plaintiff could never lift or carry any weight. *See* R. 1482. As for her opinion that Plaintiff could sit, stand, and walk for less than eight hours, Dr. de Louw identified pelvic pain and shoulder pain. R. 1483. Overall, Dr. de Louw provided weak support for her opinions; notably, she cited no objective medical evidence. Hence, supportability, the most important factor, is very weak for her opinions. As to consistency, the ALJ found that Dr. de Louw's opinions were inconsistent with her treatment notes, because they were mostly unremarkable and, in March 2021 exam, Dr. de Louw indicated that Plaintiff was doing well overall. R. 28. Although the ALJ cited a minimal quantum of evidence to support her assessment that Dr. de Louw's opinions were inconsistent with the record, the substantial evidence does not require much evidence. *Biestek*, 139 S. Ct. at 1154. In light of that forgiving standard, this court concludes that the ALJ's finding concerning consistency is supported by substantial evidence. Hence, Plaintiff cannot prevail on her second argument.

An implementing order and order of judgment follow.